## CLARA ALLAIRE, ADMRX.
### vs.
## AMBORIO ROAD CONSTRUCTION CO., INC.

Superior Court          Fairfield County          File #45195

Present: Hon. PATRICK B. O'SULLIVAN, Judge.

Reich & Reich,                    Attorneys for the Plaintiff.

J. F. Leroy,
John C. Blackall,
Charles H. Blackall,              Attorneys for the Defendant.

**MEMORANDUM FILED JULY 2, 1935.**

O'SULLIVAN, J. Although the motion to set the verdict aside is urged on the ground not only that it was the result of prejudice and partiality, but also that it was excessive, it is not through these that the defendant gets on even debatable territory, but when it argues that the verdict was contrary to law, it advances a legal problem not idly to be dismissed.

To comprehend the force of its argument, one should have in mind some of the pertinent facts. In 1934, the defendant was in the process of building a concrete highway in the Town of Farmington under a contract with the Highway Commissioner of the State of Connecticut. By July the highway had been constructed for more than ninety per cent. of its entire length of approximately 32,000 linear feet, although no work had been done upon the shoulders.

At each end of the job, the Highway Commissioner had posted large signs to the effect that the highway was closed and that anyone using it did so at his own risk. However, the highway was not barricaded and for several weeks prior to July 31st, 1934, during both the day and night, the motoring public in large numbers had been traveling over the highway, with the knowledge of the defendant, and not only without objection on its part, but actually with its acquiescence.

During the evening of July 31st, plaintiff's decedent, who during the daytime was employed on the job as a truck driver for an independent contractor, was killed when the pleasure automobile he was operating crashed into a large piece of machinery which the defendant had left upon the concrete portion of the highway over which the traveling public had been passing. There was no warning of any description upon or near this obstruction, either in the nature of reflectors, lights, signs or flags.

The complaint was in two counts, but that alleging nuisance was orally withdrawn at the time of trial, and the case was heard and determined solely on the count setting forth a cause based on negligence.

To this latter count, the defendant had pleaded, among other defenses, the following:

"The roadway on which the plaintiff was traveling was posted at both ends as being under construction and the plaintiff worked for a sub-contractor on said construction job and knew or in the exercise of reasonable care should have known that equipment might be expected to be on or near the highway, and plaintiff's intestate in connection therewith assumed any and all risks of traveling on said roadway, one of which was the presence of such equipment on or near the highway as the plaintiff's intestate drove into."

This defense is hybridous in that it alleges contributory negligence and assumption of risk; but all parties, including the Court, treated the defense as one aimed to bring into operation the right of protection, if any, afforded this defendant under Section 1513 of the General Statutes, the pertinent portion of which reads:

"The Highway Commissioner may close or restrict traffic over any section of any trunk line or state aid highway for the purpose of construction, or repair by posting notices at each end of such section of highway, and each person using such highway when such notices are so posted shall do so at their own risk."

By way of parenthesis, it should be observed that the following discussion has no bearing on the question of contributory negligence, a claim raised by another defense than that to which this memorandum is directed. And likewise in passing it might be stated that the question of contributory negligence was one of fact for the jury to settle, and those gentlemen had evidence, in addition to the statutory presumption, from which they could reasonably reach their conclusion that the deceased was in the exercise of due care.

In its instructions to the jury, the Court disregarded the statutory defense referred to, upon the ground that it was unavailable to this defendant, first, because whatever immunity Section 1513 affords is solely for the benefit of the Highway Commissioner, and, secondly, because, even assuming a contractor does obtain immunity under the section, there was no evidence that the highway in question was either a trunk line or state aid highway, and consequently the statute was not applicable.

Accordingly, the Court charged in effect that, under the undisputed evidence as to the knowledge of the defendant of and its acquiescence in the long continued use of the highway by the motoring public, the defendant owed the plaintiff's decedent, whose presence on the highway might reasonably have been anticipated, the duty of using ordinary care, and that if a breach of this duty was the sole cause of the death of the plaintiff's decedent, a verdict should be returned for the plaintiff. Pomponio vs. N. Y., N. H. & H. R. R., 66 Conn., 528, 541.

There was no evidence that the highway was either a

trunk line or state aid highway. Therefore, Section 1513 was not applicable to the facts before the jury, because the statute expressly limits whatever immunity it creates to accidents occurring only on highways which are either trunk line or state aid in character.

The defendant says, however, that it offered to present testimony that the highway was a trunk line, but that, upon objection, it was denied this opportunity by the Court. The ruling in question was based upon the incompetency of the witness to whom the query was propounded so to testify. The Court felt that the proper method of proving that the highway was a trunk line or state aid highway would require a reference to a statute specifically making a highway a trunk line or state aid highway, or lacking such legislative authority, then the presentation of documentary proof or the testimony of the Commissioner himself. But whether the ruling was right or wrong becomes academic and, if wrong, quite harmless, because of the Court's interpretation of the statute that a contractor is not in the privileged class with the Highway Commissioner and may not claim immunity under the statute.

The defendant's position is simply this: "Any person using such highway when such notices are posted shall do so at their own risk" is language so certain and all inclusive that it needs no interpretation of any nature or description. But the very assertion disproves itself. Surely the legislature did not intend to commit the terrible grammatical error the sentence contains, and even this defendant would hardly question the right of any Court to insist that the statute referred only to a risk incident to the construction of the work. Manifestly if a motorist passing over a highway was shot by the contractor it could scarcely be maintained with a solemn face that the statute was applicable.

The statute, then, is not so certain that the mere reading of it explains itself. Constantly one must have in mind the query: what was the legislative intent, for the statute must be construed to carry out that intent "though such construction may seem contrary to the letter of the statute". **Hazard vs. Gallucci, 89 Conn., 196, 198.**

"The fundamental rule for the construction of statutes is to ascertain the intent of the legislature. This intention must be ascertained from the Act itself, if the language is plain. But when the language used is doubtful in meaning, the true

meaning may be ascertained by considering it in the light of all its provisions, the object to be accomplished by its passage, its title, pre-existing legislation upon the same subject and other relevant circumstances". **Old Saybrook vs. Public Utilities Commission, 100 Conn., 322.**

At this point it seems appropriate to refer to the broad distinction between an action directed against the Commissioner and one aimed at the contractor. The former is the result of a concession to the rule of public policy which denies to an injured person the right to sue the State. It is a right granted by statute, appearing in the same Chapter which includes Section 1513. It may be tried only to the Court, not to the jury. On the other hand, an injured person has a common law right of action against the contractor.

It seems hardly debatable that the statute was not passed, as Blackstone observes, "to supply such defects and abridge such superfluities in the common law, as arise either from the general imperfection of all human laws, from change of time and circumstances, from the mistakes and inadvised determinations of unlearned or even learned judges, or from any other cause whatsoever".

In other words, the statute is not remedial. It destroys rather than creates. It fills in no void of the common law. It provides no remedy for an injured person. On the contrary, if the defendant is correct in its contention, it is in derogation of the common law and if it is, it must be strictly construed. **Norfolk R. R. Co. vs. Pendleton, 156 U. S., 667; Bray vs. Stewart, 70 Kans., 429.**

If, then, the statute was not passed to supply a void, its only other purpose was to express the policy of the state towards the traveling public. It is immaterial what prompted the legislation, for the wisdom or its lack thereof is not for the Court to question. And yet this Court is not prepared to ignore what the legislature must have known when the Act was passed. The General Assembly represents the people of the State and presumably acts for their best interests. The interpretation of the Statute in conformity with the defendant's argument would lead to the unbelievable conclusion that the legislature was desirous of sheltering a contractor, while at the same time ignoring the rights of the motoring public.

With the foregoing observations in mind one should examine the language of the statute, which, by the way, is composed of two sentences. Upon analysis, it becomes quite apparent that any person, and that includes every person, may close a state highway; the Commissioner, by his own authority, whenever he desires to construct, re-construct or repair a highway; all others may close a highway, whenever they receive the Commissioner's permission. In effect, there are two groups who may close highways, the commissioner, and all others.

The first sentence of the statute refers to the Commissioner; the second, to all others.

This seems to be exactly what the legislature had in mind. When the Commissioner closes or restricts traffic by posting notices at each end of the job, every person using the highway does so at his own risk, so far as the Commissioner is concerned, and only so far as he is concerned. Whenever others close the highway, they obtain no immunity for those acts of negligence with which the common law charges them.

To recite instances of grave injustice, were the defendant's position sound, would, perhaps serve no useful purpose, but on the other hand they can do no harm. The illustrations are limitless. For example, a contractor, thoroughly aware that the public is using the posted highway he is building, digs a ten-foot ditch across the highway to repair a broken culvert, or leaves boxes of high explosives upon the portion which the public is using. When some tragedy occurs in the night season due entirely to his own negligence, he endeavors to shelter himself behind a claim of immunity. Surely the legislature by the language it used never intended any such outcome. There is some justification, though little it is, in clothing the Commissioner with a freedom from a right of action which does not apply to a contractor, because, as indicated above, the right to recover against the Commissioner is a concession by the State, being a creature of statute. But against the contractor the injured party has a common law right to expect and to receive such conduct as measures up to the duty arising under the facts of the case.

For the foregoing reasons the Court justifies its charge to the jury, feels it was correct, and consequently refuses to set aside the verdict. Hence, the motion is denied.