Argued and submitted September 11, 2001, certified questions answered
August 8, 2002

Tonenia JENSEN,
as guardian for Vanessa Gurkin, a child,
*Plaintiff,*

*v.*

Clifford WHITLOW,
Cubazell O'Neill, Kathleen M. Powers,
Ruth Marten, Mike Lutz, William Hedges,
and Hedges & Mitchell, PC,
an Oregon corporation,
*Defendants.*

(USDC CV99-1679 BR; SC S48130)

51 P3d 599

Kathryn Hall Clarke, Portland, argued the cause for plaintiff. Mark Morrell, Portland, filed the brief for plaintiff.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for defendants. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Jonathan M. Radmacher, Portland, waived appearance for defendants Hedges, and Hedges & Mitchell, PC.

Maureen Leonard and Kathryn Hall Clarke, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Gerald H. Itkin, and Thomas Sponsler, County Attorney, Portland, filed a brief on behalf of *amicus curiae* Multnomah County.

William F. Gary, Jerome Lidz, James E. Mountain, Jr., and Harrang Long Gary Rudnick PC, Eugene, filed a brief on behalf of *amicus curiae* Oregon Health and Science University.

Harry Auerbach, Senior Deputy City Attorney, Portland City Attorney's Office, Portland, filed a brief on behalf of *amicus curiae* League of Oregon Cities.

DE MUNIZ, J.

**DE MUNIZ, J.**

This court accepted certification of the following questions from the United States District Court for the District of Oregon:

"1. Does the limitation of causes of action for a tort committed by an agent of a public body to a cause of action against only the public body violate Article I, section 10, of the Oregon Constitution?

"2. Does the limitation of causes of action for a tort committed by an agent of a public body to a cause of action against the public body violate Article I, section 17, of the Oregon Constitution?

"3. Does the limitation of causes of action for a tort committed by an agent of a public body to a cause of action against only the public body violate Article I, section 20, of the Oregon Constitution?"

*See* ORS 28.200 *et seq.* (describing certified question process); ORAP 12.20 (prescribing procedures for consideration of certified questions); *see also Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 811 P2d 627 (1991) (discussing factors court considers in exercising discretion to accept certified questions).

As a preliminary matter, it is important to clarify the exact nature of the constitutional challenges presented in the certified questions. The United States District Court initially certified a single question to this court: "Does ORS 30.265(1), on its face or as applied, violate the terms of Article I, sections 10, 17, or 20, of the Oregon Constitution?" This court divided the district court's question into six separate questions—one "facial" challenge and one "as-applied" challenge for each constitutional provision. Having rephrased the questions as such, this court then declined to consider any of the questions framed as an "as-applied" challenge. We declined to consider the "as-applied" challenges because, in most cases, a record containing evidence of the nature of the injury sustained by a plaintiff and a jury's assessment of an appropriate damages award is a necessary prerequisite to this court's consideration of an "as-applied" challenge to a statute such as ORS 30.265(1). Because this case is in a very

preliminary stage, that kind of record is not present. That said, we turn to the procedural history of this case in the United States District Court, and provide a brief historical overview of the Oregon Tort Claims Act, ORS 30.260 *et seq.*

## I. PROCEDURAL HISTORY

Plaintiff filed a complaint in the United States District Court on behalf of her minor daughter, Gurkin. Plaintiff alleged that a male foster parent had abused Gurkin while she was in the custody of Children Services Division of the State of Oregon (CSD).[1] Plaintiff further alleged that individual agents and employees of CSD were negligent in placing Gurkin in that foster parent's home and, therefore, were responsible for the sexual abuse that the foster parent inflicted on Gurkin. The individually named defendants moved to strike and dismiss the claims against them and to substitute the state as the sole defendant in accordance with ORS 30.265(1).[2] While that motion was pending, plaintiff moved the district court to certify questions to this court.

## II. OVERVIEW OF THE OREGON TORT CLAIMS ACT

In 1967, the legislature passed the Oregon Tort Claims Act (OTCA), which abrogated, in part, the state's sovereign immunity. *See* Or Laws 1967, ch 627 (first tort claims

---

[1] That agency now is the Department of Human Services. We refer to the agency as "CSD" throughout the opinion because that is how the complaint in the United States District Court identifies the agency.

[2] ORS 30.265(1) provides:

"Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598. The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only. The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action or suit against any such officer, employee or agent of a public body whose act or omission within the scope of their employment or duties gives rise to the action or suit. No other form of civil action or suit shall be permitted. If an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant."

act in Oregon). Although the 1967 version of the OTCA limited the state's liability, it did not do so for officers, employees, or agents.

The legislature revised the OTCA in 1975, requiring, rather than permitting, a public body to indemnify its officers, employees, and agents against tort claims "arising out of an alleged act or omission occurring in the performance of duty." *Smith v. Pernoll*, 291 Or 67, 71, 628 P2d 729 (1981); Or Laws 1975, ch 609, § 16. Further, "[t]he monetary limitation of liability, which previously had applied only to public bodies, was extended to officers, employees, and agents of all public bodies." *Id.* at 71.

In 1977, the legislature again revised the OTCA, coordinating all references within the act and subjecting claims against officers, employees, and agents to the monetary limitations, the notice of claim requirements and the statutory exceptions to liability. Or Laws 1977, ch 823, §§ 2(3) and 3.

Finally, in 1991, the legislature amended the OTCA to eliminate any claim against any officer, employee, or agent for their work-related torts. In place of a claim against an individual, the legislature substituted a single claim against the public body, subject to its attendant damages limitation. ORS 30.265(1). The 1991 revisions frame the issues in this case.

## III. DISCUSSION

As noted, each certified question pertains to a different constitutional provision. We begin our discussion with Article I, section 10.

### A. *Article I, Section 10*

Article I, section 10, of the Oregon Constitution, includes a "remedy clause" that provides that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation."[3] In *Smothers v. Gresham*

---

[3] Article I, section 10, provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

*Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), this court examined in detail the origins and meaning of that "remedy clause." The court concluded that, because Article I, section 10, guarantees a remedy for any "injury" to absolute common-law rights respecting person, property, or reputation, the legislature does not have plenary authority to extinguish a remedy for such injuries. *Id.* at 124. The legislature may abolish a "remedy" that existed at common law *only* if the legislature simultaneously provides a "constitutionally adequate substitute remedy." *Id.* at 124.

The conclusions about the remedy clause outlined in *Smothers* define the inquiry necessary to determine whether legislative action, in this case the enactment of ORS 30.265(1), violates that constitutional guarantee. In accordance with the analytical approach outlined in *Smothers*, our first step is to determine whether the injury that plaintiff has alleged is one for which the remedy clause guarantees a remedy. *Smothers*, 332 Or at 124. If we answer that question affirmatively, and if the legislature has abolished that common-law claim, then our second step is to determine whether the legislature has provided a constitutionally adequate substitute remedy for that abolished common-law claim. *Id.*

■ The parties have not addressed the initial question whether plaintiff has alleged an "injury" for which the remedy clause guarantees a remedy. For that reason, and because the second step of the *Smothers* analytical framework is dispositive in this case, we assume without deciding that plaintiff's "injury" is one for which Article I, section 10, guarantees a "remedy." Further, we agree, as plaintiff asserts and the state does not dispute, that the effect of ORS 30.265(1) is to abolish any claim against individual officers, employees, or agents of a public body and to substitute the public body as the sole defendant. Therefore, in this case, we focus on whether plaintiff's right of action against the public body alone provides "a *constitutionally adequate* substitute remedy[.]" *Smothers*, 332 Or at 124 (emphasis added). We turn to that inquiry.

Plaintiff and the state disagree about what constitutes a constitutionally adequate substitute remedy. Plaintiff contends that any substitute remedy must be a "substantial

equivalent" of the remedy that has been abolished and that "capped" damages,[4] where there was once the possibility of unlimited damages, is not a constitutionally adequate substitute remedy under Article I, section 10.

The state disagrees, contending that this court's decision in *Hale v. Port of Portland*, 308 Or 508, 517-24, 783 P2d 506 (1989), is "dispositive because it holds that the remedy provided by the OTCA satisfies Article I, section 10." Further, the state disputes plaintiff's assertion that a constitutionally adequate remedy is one that is "substantially equivalent." According to the state, a constitutionally adequate substitute remedy is one that is substantial, but need not be perfectly equivalent.[5]

This court's decision in *Hale* is not controlling here. In *Hale*, the plaintiff suffered severe personal injuries when the vehicle in which he was riding struck an obstacle embedded in a road. The plaintiff's medical bills alone reportedly exceeded $600,000. Through his guardian ad litem, the plaintiff filed an action against several defendants, including the Port of Portland (Port) and the City of Portland (City), to recover for those injuries. The trial court granted motions by the Port and the City to strike the plaintiff's claim for damages in excess of the $100,000 damages limitation in ORS 30.270(1)(b). On review in this court, the plaintiff contended that the OTCA damage limitations applicable to the Port and the City deprived him of his remedy for injury to his person in

---

[4] ORS 30.270(1)(b) "caps" the liability of the public body for damages as follows:

"Liability of any public body or its officers, employees or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:

"* * * * *

"(b) $100,000 to any claimant as general and special damages for all other claims arising out of a single accident or occurrence unless those damages exceed $100,000, in which case the claimant may recover additional special damages, but in no event shall the total award of special damages exceed $100,000."

[5] The state also argues that, in determining whether a substitute remedial process is substantial and therefore constitutionally adequate, the court must analyze the remedy categorically, by examining whether potential plaintiffs as a group, not as individuals, retain a substantial remedy. Because of the manner in which we resolve plaintiff's Article I, section 10, challenge, we do not reach that argument.

violation of Article I, section 10, of the Oregon Constitution. This court disagreed with plaintiff's argument, because it determined that the substitute remedy provided in the OTCA was a "substantial one." *Hale*, 308 Or at 523.

As plaintiff points out, under the version of the OTCA that existed when this court considered *Hale* in 1989, "the immunity of the state, along with all of the OTCA's special restrictions related to notice and the limitations on damages, had never been applied to an individual employee defendant." In other words, the OTCA, at that time, allowed a plaintiff to pursue a cause of action against an individual employee-defendant. By contrast, since 1991, the OTCA has limited a plaintiff's cause of action to one against the employing public body only. For that reason, the issue presented here differs from that presented in *Hale* and does not resolve the question whether ORS 30.265(1), on its face, provides a constitutionally adequate substitute remedy for the claim plaintiffs once had against individual employees of a public body. We turn to that question.

In *Smothers*, this court held that the plaintiff had a right to proceed with his negligence action against his employer because the workers' compensation laws left him with no remedial process whatsoever for his injuries. *Smothers*, 332 Or at 136. In this case, by contrast, plaintiff does not—and cannot—argue that the OTCA leaves her in the same predicament as the plaintiff in *Smothers*. Plaintiff, on behalf of Gurkin, concedes that she "is left with a claim against the state." Because plaintiff has a remedial process, she instead argues that "the limitations on damages [pursuant to ORS 30.270(1)(b)] * * * deprive [her] of a substantially equivalent remedy." Thus, the question in this case is whether, on its face, the damages cap renders the substitute remedy provided in ORS 30.265(1) an "emasculated" remedy in violation of Article I, section 10. *See Smothers*, 332 Or at 119-20 (legislature may not substitute "an 'emasculated remedy' that is incapable of restoring the right that has been injured").

■ A statute is not facially unconstitutional unless the statute is incapable of constitutional application in any circumstance. *See Stevens v. City of Cannon Beach*, 317 Or 131, 147, 854 P2d 449 (1993) (court ought not decide constitutionality of statute except in actual factual setting that makes such a decision necessary); *Northup v. Hoyt*, 31 Or 524, 529, 49 P 754 (1897) (if statute may constitutionally operate upon certain persons or cases, it is not unconstitutional simply because there may be persons or cases to whom it constitutionally cannot apply). The OTCA is capable of constitutional application. For example, if a damages award to an individual does not exceed the "cap," then the OTCA does not implicate Article I, section 10, in any way. Because the damages "cap" is not implicated in every case, and because a damages award has yet to be determined in this case, the damages "cap" does not render the remedy available to plaintiff "incapable of restoring the right that has been injured." *Smothers*, 332 Or at 119-20. Thus, ORS 30.265(1), on its face, does not deprive plaintiff of that which the remedy clause guarantees her.

We turn next to the question presented under Article I, section 17.

B. *Article I, section 17*

■ Article I, section 17, provides: "In all civil cases the right of Trial by Jury shall remain inviolate." In *Lakin v. Senco Products, Inc.*, 329 Or 62, 82, 987 P2d 463 (1999), this court held that a statutory cap that required reduction of a jury's award of noneconomic damages violated Article I, section 17, because "[t]he legislature may not interfere with the full effect of a jury's assessment of noneconomic damages, at least as to civil cases in which the right to a jury trial was customary in 1857, or cases of like nature." Plaintiff asserts that Oregon law historically has entitled persons injured by individual state employees to bring an action against those employees and receive a trial by jury. Relying on *Lakin*, plaintiff argues that, by eliminating actions against individual public employees and by capping damages recoverable in a substitute action against the public body, the legislature

has violated Article I, section 17. Plaintiff's reliance on *Lakin* is misplaced.

In *Lakin*, neither party questioned that the plaintiffs had the right under Oregon law to bring their claims or that they had the right to require a jury trial on their claims. The question, instead, was whether the plaintiffs had the right to have the jury determine the issue of damages. *Id.* at 68. This court held that, because the issue of noneconomic damages is a question of fact, the right to a trial by jury includes the right to have the jury determine the amount of those damages. *Id.* at 82. In other words, because the plaintiffs had the right to bring a civil action to which the right to a jury trial was attached, Article I, section 17, prohibited the legislature from interfering with or interrupting that right by imposing a cap on the amount of noneconomic damages that the jury could award.

■■ By contrast, in this case the legislature has eliminated plaintiff's right to bring her claim against the individual employees and has substituted a different remedy against the state. Article I, section 17, is not a source of law that creates or retains a substantive claim or a theory of recovery in favor of any party. Instead, as this court previously has held, Article I, section 17, simply "guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857[.]" *Lakin*, 329 Or at 82 (citing *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 744 P2d 992 (1987)). The right to pursue a "civil action," if it exists, must arise from some source other than Article I, section 17, because, that provision "is not an independent guarantee of the existence of a cognizable claim." *Sealey v. Hicks*, 309 Or 387, 396, 788 P2d 435 (1990), *overruled in part on other grounds by Smothers*, 332 Or at 123.

We already have determined that, for purposes of this facial inquiry, the legislature did not violate Oregon's remedy guarantee by requiring substitution of the state as the only defendant in the action. Plaintiff has no "civil action" against the individual defendants. It follows that there is no claim to which a right to a jury trial can attach. Thus, ORS 30.265(1), on its face, does not violate Article I, section 17.

## C. *Article I, Section 20*

Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Plaintiff argues that ORS 30.265(1) violates Article I, section 20, because that statute provides an immunity to government employees that is not available to other citizens. In other words, she contends that the statute creates two classes, one made up of those persons who benefit from the statutory protection and one made up of those persons to whom the protection does not extend. *See Crocker and Crocker*, 332 Or 42, 54, 22 P3d 759 (2001) (equal privileges and immunities clause scrutinizes benefits given a particular class, rather than discrimination against particular class).

The state offers multiple responses to plaintiff's argument. First, the state contends that plaintiff's argument disregards this court's decisions in *Hale*, 308 Or at 524, and *Van Wormer v. City of Salem*, 309 Or 404, 788 P2d 443 (1990), which hold that victims of governmental torts do not constitute a "true class" separate from victims of nongovernmental torts. Second, the state contends that, even if the statute addresses a true class, plaintiff lacks standing to make the challenge that she asserts. Finally, the state contends that, even if plaintiff has standing to make the challenge, the classification that ORS 30.265(1) creates does not violate Article I, section 20, because it is not based on race, gender, or other immutable personal characteristics. Therefore, according to the state, this court reviews the statute under the rational basis test, and it easily passes that test.

We need not address each of the state's responses separately. Even assuming that ORS 30.265(1) creates a favored class of public employees, and that plaintiff has standing to raise such a challenge under Article I, section 20, plaintiff's argument fails for the reasons that follow.

ORS 30.265(1) distinguishes on the basis of public employment, not any immutable characteristic such as race, religion, or alienage. *See Hewitt v. SAIF*, 294 Or 33, 45, 653

P2d 970 (1982) (classifications based on immutable characteristics are suspect). Because ORS 30.265(1) does not distinguish based on any immutable characteristic, it satisfies Article I, section 20, if the legislature had a rational basis for distinguishing between the classes involved. *Crocker*, 332 Or at 55.

ORS 30.265(1) satisfies that rational-basis test. Public bodies must attract employees to perform public services. The legislature reasonably may conclude that providing public workers with personal immunity from liability for torts committed in the scope of their public employment will assist public bodies in recruiting qualified persons to work in public service. Accordingly, ORS 30.265(1), on its face, does not violate Article I, section 20.

## IV. SUMMARY

To summarize, ORS 30.265(1), on its face, does not violate Article I, sections 10, 17, or 20.

Certified questions answered.